IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NET RESULTS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-1376 C |
| THE UNITED STATES, | ) | Judge Lawrence M. Baskir |
| Defendant. | ) | |

**Claim Construction of the Patent-in-Suit**

This patent infringement case involves a land mine detection system, which is for use in both military and humanitarian de-mining efforts. The device detects metallic and non-metallic objects on, flush with, or obscured by the ground or other surfaces using ground penetrating radar and a metal detector.

The Net Results patent, U.S. Patent No. 5,680,048 (or the '048 patent), covers technology that is essential for improved detection of metallic and non-metallic objects with an increased sensitivity and greater accuracy than previously available. Specifically, by combining sensor technologies, this device can screen out the many bits and pieces of metal found in mined areas or former battlefields

EXHIBIT
tabbies
2

that give "false positive" signals when metal detectors are used alone. As a result, this technology can save time, money and lives.

In patent claim construction, the law requires that the Court give the claim language at issue the meaning the words would have to one of ordinary skill in the art, using the entire patent as context, but understanding the distinctive roles of the specification and claims. Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005)(en banc).

The Phillips case sets forth the basic rules for claim construction in patent cases. The starting point is to give words in patent claims their ordinary meaning as understood by one of ordinary skill in the art. Intrinsic evidence (i.e., the patent specification and prosecution history) is useful in determining the meaning of the words in patent claims. Claims are not limited to the preferred embodiment disclosed in the specification. The prosecution history may inform the meaning of the words in patent claims. Extrinsic evidence, such as dictionaries, may not be used to contradict the meaning of the claim terms as evidenced by the specification and file history.

**U.S. Patent No. 5,680,048**

Asserted claims 1, 2, and 5 of the '048 Patent are device claims that recite the elements for a "mine detection system." While various exemplary embodiments are described and illustrated in the specification and drawings as preferred, the invention of the '048 Patent is not limited to those specifically disclosed embodiments. The claims may be construed by the ordinary meaning of their terms in context, and terms that are not necessarily consistent with an ordinary or broad meaning have been so specified within the specification, and are consistently used in the claims.

**Construction of Independent Claim 1 and Dependent Claims 2-5 of the '048 Patent**

> Claim 1 of the '048 Patent recites:
> A mine detection system comprising:
> a wand having a first end and an opposite second end;
> a housing mounted onto said first end of said wand;
> a signal processor supported by said wand;
> a ground penetrating radar system in communication with said signal processor, said radar system including a transmitter, a receiver, and an antenna, said antenna having a first field of view; and
> a metal detector system in communication with said signal processor, said metal detector system including metal detector coils, said metal detector coils having a second field of view;

> said antenna and said metal detector coils being contained within said housing, said metal detector coils concentrically surrounding said antenna.

The use of all terms in the '048 Patent and Claims is consistent with their ordinary meaning throughout the specification and claims, except as distinguished therein. For example, a **"metal detector system"** of claim 1 is a device that detects metal; according to the specification, a metal detector "measures the change in the magnetic field caused by the eddy currents induced into any metal within the metal detector's field of view," Col. 2, ll. 23-25, which is also consistent with the ordinary meaning of metal detector. An **"antenna"**, while not specifically defined in the specification, is used in the claims, and has a definition consistent with the ordinary meaning of the word. That is, a consistent example of an antenna is "a conductor by which electromagnetic waves are sent out or received, consisting commonly of a wire or set of wires."[1] Similarly, a "**ground penetrating radar system"** as referenced in Claim 1 above,

1 Webster's New Universal Unabridged Dictionary 87 (1996)(based on the Random House Unabridged Dictionary (1993); see, also, http://dictionary.reference.com/browse/antenna (last visited: Nov. 20, 2007)("an electrical device that sends or receives radio or television signals.")

is a radar system having detection capability that penetrates the ground. The specification references ground penetrating radars of the prior art at Col.1, ll. 18-49, and all use is consistent with the ordinary meaning of the terms. That is, an example of a radar is "a device for determining the presence and location of an object by measuring the time for the echo of a radio wave to return from it and the direction from which it returns."[2]

**Distinguishing Between Claims**

Claim differentiation generally supports a broad interpretation of limitations that are defined with increased levels of specificity in any subsequent, dependent claims. For example one limitation of Claim 1 is an "antenna." The broad interpretation of the term **"antenna"** of Claim 1 is narrowed in dependent Claim 3, which is provided as a point of reference recognizing that Claim 3 is not asserted by Plaintiff as infringed.

2 Webster's New Universal Unabridged Dictionary 1591 (1996)(based on the Random House Unabridged Dictionary (1993); see, also, http://dictionary.reference.com/browse/radar (last visited Nov. 20, 2007).

Claim 3 of the '048 Patent recites:

"The mine detection system according to Claim 1, wherein said antenna is selected from the group consisting of co-polarized, cross polarized, dual polarized, circularly polarized, and combinations thereof."

Thus, according to claim differentiation, the **"antenna"** of claim 1 should be construed broadly and should not be limited to one of the specific types of antenna recited in claim 3.

Another limitation in Claim 1 is a **"ground penetrating radar system."** The broad interpretation of the term "ground penetrating radar system" of Claim 1 is narrowed in dependent Claim 5.

Claim 5 of the '048 Patent recites:

"The mine detection system according to Claim 1, wherein said radar system is selected from the group consisting of stepped continuous wave, impulse, pulse, swept FM, continuous wave, monostatic, bistatic, balance bridge and combinations thereof."

Thus, the **"radar system"** of claim 1 should be construed broadly, without limitation to the specific types recited within claim 5.

## Other Specific Terms Used

Next we consider the specific use of other terms in the '048 Patent. For example, a **"mine detection system"** is a system that detects mines. This specifically includes the system comprising the various elements of claim 1, as they are described in claim 1, for the purpose of mine detection. The mine detection system is described in the specification as "a device for accurately detecting metallic and non-metallic mines on, flush and below a surface." Col. 3, ll. 44-46. The mine detection system is also described in specification as "a device for accurately detecting metallic with, or non-metallic objects on, flush and below a surface with, or/or obstructed by an interfering surface." Col. , ll. 47-50. The specification also notes that the object of the invention is "to reduce false alarms while searching for these objects." Col. 3, ll. 51-52. The specification describes another object of the invention is to "provide improved elements and arrangements thereof in an apparatus for the purpose described which is inexpensive, dependable and fully effective in accomplishing it intended purpose." Col. 3, ll.53-56. This is the mine

detection system enabled for independent Claim 1 as well as dependent Claims 2 and 5.

"**Signal processor**" is a processor in communication with the ground penetrating radar system and metal detector systems as described in claim 1, for the purpose of mine detection. The digital signal processor is described in the specification as a device that includes circuitry for processing the inputs of a metal detector, radiometer, radar and operator controls as well as processing outputs for video display and audio tones. Col. 5 ll. 40-49. This is the signal processor enabled for independent Claim 1 as well as dependent Claims 2 and 5.

The claims refer to "said metal detector coils concentrically surrounding said antenna." with concentric generally having its ordinary meaning. Claim 1. The specification includes particular or preferred embodiment terms, such as **"co-boresighted"** and **"co-located,"** which have specific meanings in the context of the present invention. A boresight is a generally accepted term. "Co-boresighting the metal detector coils with the radar antenna aligns both sensors so that the centers of their respective fields of view are

pointed at the same location." Col. 2, ll. 5-7. Co-locating is also a generally accepted term. "Co-locating the metal detector coils with the radar antenna places the coils and antenna in basically the same space in relative, physical alignment." Col. 2, ll. 11-22.

For example, in the embodiments shown in Figures 3, 4, and 5, of the '048 Patent the antenna and coils are relatively oriented concentrically as shown, and therefore, the lines of sight are coincident, e.g., Col. 6, ll. 3-4. Additionally, the radar antenna and metal detector coils in each of these Figures are both co-located and co-boresighted. Col. 2, ll. 5-10. Co-location and co-boresighting the metal detector coils with the radar antennas is illustrative of "substantially similar" fields of view. This arrangement of elements is covered by the phrase "wherein said first field of view of said antenna is substantially similar to said second field of view" as recited in dependent Claim 2.

Claim 2 of the '048 Patent recites:

> "The mine detection system according to Claim 1, wherein said first field of view of said antenna is substantially similar to said second field of view of said metal detector coils."

Other embodiments include configurations in which the antenna and coils are oriented differently, such that although they are co-located and concentric, they are not co-boresighted. Col. 6, ll. 34 – Col. 7, ll. 4. Instead, the line of sight may be "offset" for various effects. Offset simply means co-located and concentric, but not co-boresighted. This arrangement of elements is described by the term "offset" as recited in Claim 4, which is provided as a point of reference recognizing that Claim 4 is not currently asserted by Plaintiff.

Claim 4 of the '048 Patent recites:

> "The mine detection system according to Claim 1, wherein said first field of view of said antenna is offset from said second field of view of said metal detector coils by a predetermined angle."

Based on the analysis set forth above, Plaintiff requests that the Court adopt the foregoing constructions of the disputed claims.

**Expert Testimony**

Plaintiff intends to offer expert testimony during the anticipated claim construction hearing. Counsel for Plaintiff therefore identifies, at this time, Robert F. Altherr Jr., Dr. Dean Mensa and Dr. R.C. Hansen as Plaintiff's possible expert witnesses. Robert F.

Altherr Jr. is an engineer and patent attorney, Dr. Dean Mensa is an expert in the areas of elctromagnetics, signal processing and radar, and Dr. R.C. Hansen is an expert in the areas of antenna and microwaves.

Respectfully submitted,

THOMAS O. MASON
RACHEL L. SEMANCHIK
Williams Mullen
8270 Greensboro Drive, Suite 700
McLean, VA 22102
Phone: (703) 760-5200
Facsimile: (703) 748-0244

Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of November 2007, I caused the foregoing Plaintiff's Claim Construction of the Patent-in-Suit to be served via first class mail upon:

John A. Hudalla
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Washington, DC 20530
(202) 307-0345 (facsimile)

Counsel for Defendant The United States

Thomas O. Mason