THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - -x
NET RESULTS, INC., :
Plaintiff, :No. 04-1376C
v. :Judge Lawrence M. Baski
THE UNITED STATES, :
Defendant. :
- - - - - - - - - - - - - -x

McLean, Virginia

Thursday, May 22, 2008

Deposition of LLOYD S. RIGGS, a witness herein, called for examination by counsel for Plaintiff in the above-entitled matter, pursuant to notice, the witness being duly sworn by CATHERINE S. BOYD, a Notary Public in and for the District of Columbia, taken at the offices of Williams Mullen, 8270 Greensboro Drive, Suite 700, McLean, Virginia 22102, at 9:09 a.m., Thursday, May 22, 2008, and the proceedings being taken down by Stenotype by CATHERINE S. BOYD and transcribed under her direction.

EXHIBIT
tabbies
5

P R O C E E D I N G S

Whereupon,

LLOYD S. RIGGS,

was called as a witness by counsel for Plaintiff, and having been duly sworn by the Notary Public, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR PLAINTIFF

BY DR. HOLLOWELL:

Q. My name is Kelly Hollowell, and I'm with the law office of Williams Mullen representing Net Results, Incorporated, in this case, which is styled Net Results, Incorporated versus the United States, Case Number 04-1376, in the United States Court of Federal Claims.

Will the attorneys present and everyone else please introduce themselves?

MS. HOLMES: Kathleen Holmes here on behalf of Net Results.

MR. MASON: Thomas Mason, law firm of Williams Mullen on behalf of Net Results.

MR. HUDALLA: John Hudalla from the Department of Justice representing the United

We don't have to. I want to understand what processes, means processes signals.

THE WITNESS: Well, the processes, the signal processor carried out processes on the data from the metal detector and the ground penetrating radar.

Those processes are generally thought of as some mathematical manipulation of the data in general.

That could be, as Mr. Wollny points out in his patent, it might be some type of integration.

Integration is a reasonably broad term. Generally integration might mean summation or it might be combinations of some of the metal detector in the ground penetrating radar in some form.

BY DR. HOLLOWELL:

Q. Again, your definition, I'll return to your definition on page 7.

"I hereby define signal processor as a device that processes signals from the GPR and

metal detector systems."

A. That's right. That particular definition is provided based on the comments in Mr. Wollny's patent based on his discussion of the signal processor.

Q. Generally speaking?

A. Um-hm.

Q. A signal processor processes signals for what purpose?

A. Well, again, the signal processor would process the signals.

In the case of a mine detection system, hand held system that used ground penetrating radar and metal detector, it would process those signals hopefully in a way that would maximize probability of detection and minimize probability of false alarm, and at the same time, allow a reasonably high scan rate.

That would be what those processes would attempt to achieve.

Q. Does the signal processor generally provide an output?

MR. HUDALLA: We're talking general, right?

DR. HOLLOWELL: Generally; that's all just generally.

THE WITNESS: Certainly, certainly you would need to have an output of some form.

BY DR. HOLLOWELL:

Q. Would all processors, signal processors have an output of some form?

A. I would think one could generalize and say that.

Q. Would you agree that a signal processor generally is a device that processes signals and provides output?

A. Yes, certainly. You, one would think that it would indeed provide output in some form.

Q. In the context of this patent, would that, the Wollny patent, would that be an acceptable definition?

MR. HUDALLA: Objection to form. Mischaracterizes the witness' testimony.

BY DR. HOLLOWELL:

or antennas possibly.

There would be a, a transmitter that would apply the RF signal to the transmitting antenna, a receiver that would receive the signal from the receiving antenna.

There might be, you know, various components of the transmitter and various components of the receiver, depending on the particular method used.

The components would vary.

Q. How do you get those components to operate in the field?

A. Well, I mean the system would, would be developed and certainly would be working.

You know, the researcher would build a system perhaps in a, what's referred to as a brass board model or a model that was not necessarily integrated into a small package.

Q. Okay.

A. To begin with; and then test out their concepts and ideas and prove out that they indeed would have the ability to detect a buried object.

And then from then, from that point, they might move toward a miniaturization process or some way to reduce the footprint and weight of the, of the ground penetrating radar electronics and signal processing package, et cetera.

Q. Would you enclose or encase this system to protect it from the elements?

Let me start over. You're using this radar system or a combination system outdoors, is that correct?

A. Right. Certainly one would do that.

Q. How do you, how do you protect, how do you protect a system, the electronic components of such a system?

A. Well, the -- I mean that would be certainly a part of, of what one was interested in, in pursuing via the design.

I mean certainly there might be some components or parts of the system that would, would, in a brass board version of it at least, might be damaged by say moisture or rain or soil contamination or dust.

Q. And how would you protect against those elements?

A. Well, they would need to be packaged in some way to, to protect them from the, from the outside elements, you know, metallic case perhaps.

Q. Would sackcloth do?

A. Well, I mean I guess that would provide some protection, but generally speaking, you want it to be weatherproof, you know, and maybe in a sealed container so that it would be impervious to moisture, moisture and rain.

Q. So if I understand correctly, a sensor system GPR/metal detection combination would for practical use in the field require a housing that protected it against the elements?

Do I that understand that correctly?

MR. HUDALLA: Objection to the form.

THE WITNESS: That seems reasonable.

BY DR. HOLLOWELL:

Q. Okay. Page 5, paragraph 4, you discuss the Di Piazza patent.