IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 04-1376C

Judge Lawrence M. Baskir

NET RESULTS, INC.,
Plaintiff,
v.

THE UNITED STATES,
Defendant.

# DEFENDANT'S CLAIM CONSTRUCTION BRIEF

GREGORY G. KATSAS
Assistant Attorney General

JOHN FARGO
Director

JOHN A. HUDALLA
Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530
Telephone: (202) 307-0334
Facsimile: (202) 307-0345

Of Counsel:
GARY L. HAUSKEN
Attorney
U.S. Department of Justice

August 20, 2008

Attorneys for Defendant

# TABLE OF CONTENTS


Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I. "Mine Detection System" Need Not Be Construed . . . . . . . . . . . . . . 4

A. "Mine Detection System" Appears in the Claim Preamble and Only Summarizes the Invention . . . . . . . . . . . . . . . . . . . . . 4

B. Should the Court Find Construction of the Preamble Necessary, the Words "Mine Detection System" Should Be Given Their Ordinary Meaning . . . . . . . . . . . . . . . . . . . . . . 7

C. The Court Should Reject Plaintiff's Attempt to Import Unclaimed Objects of the Invention as Limitations . . . . . . . . . 8

1. Stated Objects of the Invention in the Specification Do Not Constitute Claim Limitations . . . . . . . . . . . . . . . . 9

2. "Scan Rate" Appears Nowhere in the Specification or Prosecution History . . . . . . . . . . . . . . . . . . . . . . . . 12

3. The References to "High," "Low," and "Reasonable" in Plaintiff's Proposed Construction Would Render the Claim Indefinite . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II. Defendant's Proposed Construction of "Housing" . . . . . . . . . . . . . . 15

III. Defendant's Proposed Construction of "Said Metal Detector Coils Concentrically Surrounding Said Antenna" . . . . . . . . . . . . . . . 19

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## CASES

Boss Control, Inc. v. Bombardier Inc.,
410 F.3d 1372 (Fed. Cir. 2005) ..................................................... 18

Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,
289 F.3d 801 (Fed. Cir. 2002) ..................................................... 4, 7

Geneva Pharms., Inc. v. GlaxoSmithKline PLC,
349 F.3d 1373 (Fed. Cir. 2003) ............................................... 14, 15

IMS Tech., Inc. v. Haas Automation, Inc.,
206 F.3d 1422 (Fed. Cir. 2000) ....................................................... 6

Intel Corp. v. VIA Techs., Inc.,
319 F.3d 1357 (Fed. Cir. 2003) ..................................................... 18

Liebel-Flarsheim Co. v. Medrad, Inc.,
358 F.3d 898 (Fed. Cir. 2004) .................................................... 9, 10

Markman v. Westview Instruments, Inc.,
52 F.3d 967 (Fed. Cir. 1995) ........................................................... 3

MBO Labs., Inc. v. Becton, Dickinson & Co.,
474 F.3d 1323 (Fed. Cir. 2007) ..................................................... 23

Phillips v. AWH Corp.,
415 F.3d 1303 (Fed. Cir. 2005),
*cert. denied*, 546 U.S. 1170 (2006) ....................................... *passim*

Southwall Techs., Inc. v. Cardinal IG Co.,
54 F.3d 1570 (Fed. Cir. 1995) ....................................................... 24

Symantec Corp. v. Computer Assocs. Int'l, Inc.,
522 F.3d 1279 (Fed. Cir. 2008) ................................................... 5, 6

Toro Co. v. White Consol. Indus., Inc.,
266 F.3d 1367 (Fed. Cir. 2001) .................................................... 16

Vitronics Corp. v. Conceptronic, Inc.,
90 F.3d 1576 (Fed. Cir. 1996) ................................................. 13, 18

## STATUTES

28 U.S.C. § 1498 ............................................................................... 1

35 U.S.C. § 112 ............................................................................ 2, 13

## MISCELLANEOUS

Chisum on Patents § 8.06[1][b][i] ............................................................ 4

Robert A. Faber, Landis on Mechanics of Patent
Claim Drafting § 3:11 (5th ed. 2006) ....................................................... 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NET RESULTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1376 C |
| | ) | |
| THE UNITED STATES, | ) | Judge Lawrence M. Baskir |
| | ) | |
| Defendant. | ) | |

# DEFENDANT'S CLAIM CONSTRUCTION BRIEF

Pursuant to the court's Order of July 25, 2007, as modified by the Order of January 15, 2008, defendant, the United States, hereby submits its claim construction brief and responds to Plaintiff's Opening Brief for Claim Construction, filed July 21, 2008 ("Pl.'s Cl. Const. Br.").

## Introduction

This is a patent infringement suit brought under 28 U.S.C. § 1498(a) in which plaintiff alleges that certain land mine detectors used or manufactured by or for the U.S. Army infringe claims 1, 2, and 5 of U.S. Pat. No. 5,680,048 ("the '048 patent" or "patent-in-suit"). Compl. ¶¶ 21-22; Joint Claim Construction Statement ("JCCS") at 1. Through a series of exchanges between the parties of claim charts and proposed claim

constructions, the parties have narrowed the list of disputed patent claim terms to three terms, which the parties have now submitted for construction by the court. JCCS App. B. These three disputed terms appear in the text of claim 1 of the patent-in-suit, but they are also incorporated into claims 2 and 5, which depend from claim 1. See 35 U.S.C. § 112, ¶ 4.

In its opening claim construction brief, plaintiff advanced pedantic constructions that contradict the patent specification. Defendant's proposed constructions, by contrast, are grounded on the plain meaning of the claim language as confirmed by the patent's specification. Because the Federal Circuit has deemed the patent specification to be the single best guide to the meaning of a disputed term, the court should adopt defendant's constructions of the disputed claim terms in this case.

## **Statement of Law**

In Phillips v. AWH Corp., the *en banc* Federal Circuit re-emphasized the primacy of the intrinsic evidence—in particular, the specification—in claim construction. Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc), *cert. denied*, 546 U.S. 1170 (2006). Unless the inventor has clearly defined a term in the written description or prosecution history, the

words of a claim are to be given their ordinary and customary meaning from the standpoint of one skilled in the art as of the effective filing date of the invention, id. at 1313, which is August 19, 1996, for the patent-in-suit. See Pl.'s Cl. Const. Br. Ex. 1 ('048 patent) at 1. Importantly, however, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Phillips, 415 F.3d at 1313. The Federal Circuit explained that the claims "do not stand alone," but "are part of 'a fully integrated written instrument,' consisting principally of a specification that concludes with the claims." Id. at 1315 (quoting Markman v. Westview Instruments, Inc., 52 F.3d 967, 978 (Fed. Cir. 1995)) (internal citation omitted). Thus, "claims must be read in view of the specification, of which they are a part" because "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Phillips, 415 F.3d at 1315 (internal quotations and citations omitted).

On the other hand, extrinsic evidence, which may include expert and inventor testimony, dictionaries, and learned treatises, "may be useful to

the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Id. at 1317-19.

## Argument

### I. "Mine Detection System" Need Not Be Construed

#### A. "Mine Detection System" Appears in the Claim Preamble and Only Summarizes the Invention

The words "mine detection system" appear only in the preamble of the asserted claims. See generally 3 Chisum on Patents § 8.06[1][b][i]. The preamble of a claim limits its scope only in certain instances:

> In general, a preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim. Conversely, a preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.

Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed. Cir. 2002) (internal citations and quotation omitted). For example, a

preamble may limit a claim where it provides the antecedent basis[1] for the body of the claim or where it is used during patent prosecution to distinguish the invention over the prior art. See Symantec Corp. v. Computer Assocs. Int'l, Inc., 522 F.3d 1279, 1288-89 (Fed. Cir. 2008). If a preamble is "reasonably susceptible to being construed to be merely duplicative of the limitations in the body of the claim (and was not clearly added to overcome a rejection)," it is not construed as a separate limitation. Id.

In the asserted claims, the words "mine detection system" are never referenced again after the preamble of the claims, so they cannot be said to provide antecedent basis for later claim limitations. Nor do the claims refer back to the "mine detection system" by commonly used terminology, such as "said detection system" or "said mine detection system." Because "the preamble adds no limitations to those found in the body of the claim, the preamble is not itself a claim limitation and is irrelevant to proper

[1] "Antecedent basis" refers to the first instance an element is named in a patent claim, and this first instance is often preceded by an indefinite article such as "a" or "an" (*e.g.*, "a wand"). The patent claim drafter may later refer back to previously named elements or "antecedents" with a preceding definite article such as "the" or "said" (*e.g.*, "said wand"). See Robert A. Faber, Landis on Mechanics of Patent Claim Drafting § 3:11 (5th ed. 2006).

construction of the claim." IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d 1422, 1434 (Fed. Cir. 2000).

As mentioned above, the preamble could also be a limitation where it is used during patent prosecution to distinguish the invention over the prior art. See Symantec, 522 F.3d at 1288-89. While plaintiff correctly points out that the preamble of the asserted claims was amended during prosecution from "[a]n object detection system" to "[a] mine detection system," see Pl.'s Cl. Const. Br. 12-13. & Ex. 4 at 4-5, nothing in the prosecution history indicates that this change was made to overcome or distinguish the invention over prior art. In fact, the patent examiner stated that the amended claims were allowable over the cited prior art based on structural changes made to *the body of the claim*, not changes to the preamble. See Pl.'s Cl. Const. Br. Ex. 10 ("[I]t was agreed that the proposed amendment defining the housing containing the metal detector and ground radar connected to the processor with a wand would define the invention over the prior art of record."). Instead, in his amendment of the preamble, the inventor simply refined the field of intended use for the invention from object detection to mine detection. And, as stated by the

Catalina court, statements on intended use of the invention should not be given limiting weight. See Catalina, 289 F.3d at 808.

For these reasons, the court should find that the words "mine detection system" are not limiting to the asserted claims and, therefore, need not be construed by the court.

### B. Should the Court Find Construction of the Preamble Necessary, the Words "Mine Detection System" Should Be Given Their Ordinary Meaning

| | |
|---|---|
| *Plaintiff:* A system that detects mines with a high probability of detection, low probability of false alarms and a reasonable scan rate. | *Defendant:* A system that detects mines. |

Even if the court deems the preamble of the asserted claims to be limiting, it should adopt defendant's proposed construction of "mine detection system," namely, a system that detects mines. Defendant's definition represents the plain and ordinary meaning of "mine detection system," and this meaning is supported by the written description. See, e.g., Pl.'s Cl. Const. Br. Ex. 1 at 1:8-10 ("The present invention relates to a surface penetrating object detection system . . . ."); 1:43-51 ("The instant invention is a device that can detect metallic and non-metallic objects on, flush with, or below the ground or other surfaces . . . . While there are a number of uses for the present invention . . . , one of the most critical areas

of use is the detection of land mines."). Moreover, defendant's proposed construction echoes the field of intended use—mine detection—designated by the inventor in his amendment to the preamble. See Pl.'s Cl. Const. Br. 12-13. & Ex. 4 at 4-5. Indeed, this construction is supported by plaintiff's own Claim Construction statement, served November 28, 2007, where plaintiff plainly stated that "a 'mine detection system' is a system that detects mines." Pl.'s Cl. Const. Br. Ex. 2 at 7. For this reason, the court should adopt defendant's proposed construction.[2]

### C. The Court Should Reject Plaintiff's Attempt to Import Unclaimed Objects of the Invention as Limitations

Plaintiff's proposed construction for "mine detection system" should be discarded because it inserts objects and goals of the invention that are enumerated in the patent specification, including "high probability of detection" and "low probability of false alarms," as limitations under the guise of claim construction. Plaintiff purports to cite portions of the

---

[2] Plaintiff suggests that, under defendant's construction, "anything or anyone who finds a mine qualifies as a 'mine detection system,'" including "a soldier holding a wand and walking and stamping the ground . . . ." Pl.'s Cl. Const. Br. at 13-14. But plaintiff's absurd suggestions ignore the limitations in the body of the asserted claims, which define a particular system for detecting mines. The court must construe claim limitations in the context of the claim in which they appear. See Phillips, 415 F.3d at 1314.

specification enumerating these objects of the invention as support for its construction. Pl.'s Cl. Const. Br. at 10-11. In addition, plaintiff cites both plaintiff's and defendant's experts' reports—purely extrinsic evidence—for the proposition that the words "mine detection system" should also be construed to require a "reasonable scan rate." Id. at 14-15. The court should reject plaintiff's proposed construction, however, because its construction contradicts the plain meaning of "mine detection system" and because there was no clear disavowal of claim scope to justify the more narrow and limited construction plaintiff seeks. The Federal Circuit has warned courts to be particularly chary using expert testimony to define claim terms. See Phillips, 415 F.3d at 1318.

### 1. Stated Objects of the Invention in the Specification Do Not Constitute Claim Limitations

This court should not countenance plaintiff's bald attempt to import unclaimed objects of the invention—high probability of detection and low probability of false alarms—into the words "mine detection system." "The fact that a patent asserts that an invention achieves several objectives does not require that each of the claims be construed as limited to structures that are capable of achieving all of the objectives." Liebel-

Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 908 (Fed. Cir. 2004). The inventor here did not choose to expressly limit his patent claims to certain probabilities of detection or false alarms, as was his option.[3] Therefore, plaintiff cannot maintain that the plain meaning of "mine detection system" should be overwhelmed and limited by stated but unclaimed objectives from the patent specification.

Moreover, in plaintiff's brief, plaintiff's discussion of objects of the invention makes several statements that are not supported by the supporting citations to the patent specification provided by plaintiff.[4] For example, plaintiff cites column 1, lines 43-47 of the patent-in-suit for the proposition that "[t]he high probability of detection is achieved by the operation of dual sensors (to view both metallic and non-metallic mines) and the mounting on the wand (to increase searchable terrain)." Pl.'s Cl.

---

[3] Considering that it was the inventor who claimed an invention with a non-limiting preamble, it is wrong for plaintiff to complain that defendant's proposed construction of that preamble "merely rephrases the words within the term" and "tells us nothing . . . ." See Pl.'s Cl. Const. Br. at 13. Indeed, as the Federal Circuit recognized in Phillips, the construction of certain claim terms is sometimes readily apparent to the court without further elucidation. See Phillips, 415 F.3d at 1314.

[4] Defendant objects to this practice, which occurs throughout plaintiff's brief. The court is cautioned to closely examine the portions of the patent specification cited by plaintiff. Defendant may seek leave to file a surreply if this practice continues in plaintiff's reply brief.

Const. Br. at 11. In contrast, the cited passage of the patent-in-suit neither mentions probability of detection nor how a high probability of detection would be achieved. See Pl.'s Cl. Const. Br. Ex. 1 at 1:43-47 (merely reciting the elements of an embodiment of the invention). Similarly, plaintiff cites to column 1, lines 55-59 of the patent-in-suit for the proposition that "[a] system that creates false alarms is rendered useless, because responding to false alarms is time consuming and slows progress across terrain." Pl.'s Cl. Const. Br. at 11. But the cited passage merely discusses how prior art metal detectors are subject to "large numbers of false alarms" when operated at "full sensitivity," thus rendering such prior art metal detectors "useless." See Pl.'s Cl. Const. Br. Ex. 1 at 1:55-59. The cited passage says nothing about time consumed or about slowed progress across terrain due to false alarms. As can be seen, these patent specification sections cited by plaintiff in no way support plaintiff's proposed construction.

While reducing false alarms and increasing probability of detection are mentioned as objects of the invention, nothing in the specification suggests that these objects should be transformed into claim limitations. Following the guidance of the Federal Circuit, the court should not assume

that every stated object or goal of the invention must be ascribed to every claim, as plaintiff seems to suggest. As such, the court should reject plaintiff's attempt to read these objects and goals into the preamble of the asserted claims.

**2. "Scan Rate" Appears Nowhere in the Specification or Prosecution History**

Plaintiff's proposed construction of "mine detection system" also includes a requirement for a "reasonable scan rate." But the term "scan rate" appears nowhere in the patent specification or prosecution history despite plaintiff's misleading and incorrect citation to the patent specification. See Pl.'s Cl. Const. Br. at 11. Plaintiff cites to column 3, lines 25-57 to support its "reasonable scan rate" argument, among other things, Id., but this phrase is not used in the cited portion. Nor does the patent specification discuss the speed with which the patented detector may be used. These facts suggest the impropriety of ascribing an unclaimed limitation relating to "scan rate" to the words "mine detection system."

The only actual evidence that plaintiff propounds in favor of importing "reasonable scan rate" into its definition is purely extrinsic evidence; namely, plaintiff's and defendant's expert reports. See Pl.'s Cl. Const. Br.

at 14-15. As such, the court should not permit such an unclaimed limitation regarding scan rate to be imported into the claim scope because it is wholly unsupported by the patent specification.[5] Here, intrinsic evidence alone resolves any ambiguity in the construction of "mine detection system," so it is improper to rely—let alone rely solely—on extrinsic evidence, as plaintiff proposes. See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996) (stating that it is improper to rely on extrinsic evidence where intrinsic evidence alone resolves a claim term's proper construction). For this reason, the court should reject plaintiff's suggestion that "mine detector system" include a limitation related to "scan rate."

#### 3. The References to "High," "Low," and "Reasonable" in Plaintiff's Proposed Construction Would Render the Claim Indefinite

Plaintiff's proposed claim construction should also be rejected because plaintiff's use of the words "high," "low," and "reasonable" would render plaintiff's proposed construction indefinite. Patent claims must be written to "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. But

[5] Even if the experts' teachings on scan rate could be considered intrinsic evidence, they must still be rejected in the construction of "mine detection system" as relating to an unclaimed object or goal of the invention. See sec. I.C.1., *supra*.

the specification and prosecution history of the patent-in-suit are silent on what "high probability of detection," "low probability of false alarms," and "reasonable scan rate" would mean quantitatively. As such, one skilled in the art could not make a determination on infringement under plaintiff's indefinite proposed construction.

In Geneva Pharms., Inc. v. GlaxoSmithKline PLC, 349 F.3d 1373, 1383-84 (Fed. Cir. 2003), the court rejected the patent owner's proposed construction of the term "synergistically effective amount" because the construction rendered the term indefinite. The court reasoned that "[a] claim is indefinite if its legal scope is not clear enough that a person of ordinary skill in the art could determine whether a particular composition infringes or not." Id. at 1384. In the instant case, the terms "high probability of detection," "low probability of false alarms," and "reasonable scan rate" in plaintiff's proposed construction create similar indefiniteness, where one of skill in the art could not make a determination on infringement for a given mine detector. Neither the adjectives "high," "low," and "reasonable," nor the patent specification, provide any standard against which probability of detection, probability of false alarms, and scan rate could be compared to determine infringement or noninfringement. As

such, plaintiff's proposed construction should be rejected, because it "is the epitome of indefiniteness." Id.

## II. Defendant's Proposed Construction of "Housing"

| | |
|---|---|
| *Plaintiff:* A protective enclosure for containment of an apparatus used to prevent damage in handling or operation. | *Defendant:* A cover. |

In the asserted claims, the "housing" is said to be "mounted onto . . . said wand," and the ground penetrating radar antenna and metal detector coils are "contained within said housing . . . ." Pl.'s Cl. Const. Br. Ex. 1 at claim 1. In the patent specification, the only disclosed element that meets these limitations is the "plastic hemispherical protective cover 301" mentioned with reference to Figures 3-9. See id. at FIGS. 3-9; 5:65-66; 6:6-7; 6:14-15; 6:23-24; 6:35-36; 6:52-53. Because the inventor did not expressly limit the housing to the "plastic hemispherical" type in the asserted claims, this language is not included in either party's proposed construction.

Moreover, the inventor chose to claim the "housing" without any functional language like that suggested by plaintiff, such as "protective" and "for containment of an apparatus used to prevent damage in handling

or operation." Such unclaimed functional language should be rejected because "housing" is purely a structural limitation, and "[a]n invention claimed in purely structural terms generally resists functional limitation." Toro Co. v. White Consol. Indus., Inc., 266 F.3d 1367, 1371 (Fed. Cir. 2001). The Toro court reasoned that "functions do not become part of the claimed structure unless claimed as such." Id. Applying this holding to the instant construction, the function mentioned in the specification and in plaintiff's proposal that the cover be "protective" should not be read into the purely structural limitation "housing." Plaintiff's proposed language regarding "containment" and "prevent[ing] damage" should be rejected for the same reasons.

In addition, many of plaintiff's arguments in support of its proposed construction for "housing" are based on attorney argument, rather than the patent specification. For example, plaintiff's brief makes unsupported statements that the claimed mine detection system "is a device used outdoors, exposed to all natural elements, in and around variable terrain." Pl.'s Cl. Const. Br. at 16. Plaintiff continues that "[t]he fragility, sensitivity, and need for specific alignment of sensor technologies make a housing that protect the sensors necessary for the device to perform accurately."

Id. Plaintiff's argument concludes that "[a] 'housing' that does not protect the multi-sensor module will lead to malfunction and/or inaccuracy in land mine detection and thus death and injury." Id. Yet these statements are not supported by citations to the specification or any other applicable reference. As such, they constitute wholly unsupported attorney argument, which the court should completely discount in rendering its claim construction.

Plaintiff also alleges that certain portions of the patent prosecution history support its construction of "housing." They do not. In particular, plaintiff cites the inventor's amendments to the title of the invention and the claims, in which the word "housing" was added, as "evidence of the importance of this component . . . ." Id. at 16-18. But the mere addition of the word "housing" to the title and claims does not support plaintiff's argument that the housing should be defined as "protective," "for containment," and "to prevent damage." To the contrary, the amended title and claims do not include any of these functional descriptors proposed by plaintiff. In a similar fashion, plaintiff cites to the patent examiner's Interview Summary, where the examiner mentions that "the housing containing the metal detector coils and ground radar . . ." is one aspect of

the amended claims that defined the invention over the cited prior art. Id. at 17-18 & Ex. 10. Again, nothing about the examiner's mere mention of the word "housing" supports the construction proposed by plaintiff.[6]

For these reasons, the court should adopt the only construction for the purely structural limitation "housing" that is supported by the specification, namely, "a cover."

[6] Plaintiff's citations to extrinsic evidence, including defendant's expert's report (see Pl.'s Cl. Const. Br. at 18-20), dictionary definitions (see id. at 21), and an unrelated patent (see id. at 20-21 & Ex. 7) are unnecessary because intrinsic evidence alone resolves ambiguity as to the proper construction of the structural limitation "housing." See Boss Control, Inc. v. Bombardier Inc., 410 F.3d 1372, 1377 (Fed. Cir. 2005); Intel Corp. v. VIA Techs., Inc., 319 F.3d 1357, 1367 (Fed. Cir. 2003); Vitronics, 90 F.3d at 1583.

## III. Defendant's Proposed Construction of "Said Metal Detector Coils Concentrically Surrounding Said Antenna"

| | |
|---|---|
| *Plaintiff:* The metal detector coils and the antenna(s) have a common center point and are in the same horizontal plane. | *Defendant:* The metal detector coils and the antenna are centered on a common axis and are located in basically the same space. |

The final clause of claim 1 recites "said metal detector coils concentrically surrounding said antenna." The parties' proposed constructions differ in the way that they describe the relationship between the metal detector coils and the ground penetrating radar antenna. As such, this construction turns on what the inventor meant by the phrase "concentrically surrounding."

Importantly, the patent specification uses the term "concentric" to describe the relationship between coils and antenna only with reference to Figure 3:

> As can be seen the radar antenna [305] and metal detector coils [302] are both co-located and co-boresighted. The antenna and coils are concentric, and therefore, their line of sight is coincident.




FIG. 3

Pl.'s Cl. Const. Br. Ex. 1 at FIG. 3; 6:1-4. As such, a proper construction of "concentrically surrounding" must incorporate the meanings of the defined terms "co-located" and "co-boresighted." And the inventor stated that "[t]he terms co-boresighted and co-located have specific meanings in the context of the present invention." Pl.'s Cl. Const. Br. Ex. 1 at 2:3-4.

The inventor defined "co-located" and "co-boresighted" in the following two passages from the written description:

> Co-boresighting the metal detector coils with the radar antenna aligns both sensors so that the center of their respective fields of view are pointed at the same location. Co-locating the metal detector coils with the radar antenna places the coils and antenna in basically the same space, (see FIGS. 3-9).
> . . .
> Co-location here means that the metal detector coils and the radar antenna are physically aligned on the same axis, and therefore have vertically aligned centers of gravity thus improving stability for hand held operation.

Id. at 2:5-10,19-22. These definitions show that, where the coils concentrically surround the antenna, the coils and antenna must (a) be aligned so that the center of their respective fields of view are pointed at the same location; (b) be located in basically the same space; and (c) be physically aligned on the same axis with vertically aligned centers of gravity. These concepts are crystalized in defendant's proposed definition in the phrases "centered on a common axis" and "located in basically the same space."

Notably, plaintiff cites to the same intrinsic evidence, including Figure 3, its accompanying text, and the patent specification definitions of co-boresighted and co-located, as support for its definition of "said metal detector coils concentrically surrounding said antenna." Pl.'s Cl. Const. Br. at 22-24, 25-26, 27. Plaintiff's argument differs from that of defendant, however, in that it alleges that the word "concentric" is a separate and

distinct concept from co-boresighting and co-locating. Id. at 22-23, 27-28. As support for its argument, plaintiff argues that one aspect of its proposed construction—that "the GPR and metal detector lie in the same horizontal plane"—is necessary to distinguish "concentric" from "co-located." Id. at 27. But plaintiff provides no explanation as to why these concepts should be distinguished; nothing in the specification prevents a concentric arrangement from also being co-located. In fact, the plain text of the specification clearly links the word "concentric" to Figure 3 and the expressly defined terms "co-located" and "co-boresighted." Pl.'s Cl. Const. Br. Ex. 1 at FIG. 3; 2:5-10,19-22; 6:1-4.

Plaintiff provides several other flawed arguments to support its contention that a proper construction of "said metal detector coils concentrically surrounding said antenna" must include a limitation that the radar antenna and metal detector coils be on the same horizontal plane. First, plaintiff purports to find support for this limitation in its own verbal interpretation of the drawing in Figure 3. See Pl.'s Cl. Const. Br. at 23. But plaintiff's attempt to read in limitations from its own interpretation of Figure 3 should be rejected because "patent coverage is not necessarily

limited to inventions that look like the ones in the figures." MBO Labs., Inc. v. Becton, Dickinson & Co., 474 F.3d 1323, 1333 (Fed. Cir. 2007).

Second, plaintiff cites a dictionary definition of "concentric" to support its common horizontal plane argument. Pl.'s Cl. Const. Br. at 26-27. Plaintiff states that the second of the two definitions, namely, "having a common axis," requires that the common axis be the *x*-axis, *i.e.*, the horizontal axis as viewed in Figure 3. Id. at 26. But, even if plaintiff's reference to the dictionary definition were necessary, which it is not, plaintiff's interpretation does not square with the express definition of "co-located," which requires that the coils and antenna have "*vertically* aligned centers of gravity." Pl.'s Cl. Const. Br. Ex. 1 at 2:19-22 (emphasis added). As such, plaintiff's "same horizontal plane" construction is antithetical to the vertical alignment expressed in the patent specification. In contrast, the construction proposed by defendant for "centered on a common axis," which is expressly supported in plaintiff's definition of "co-location," allows for vertical alignment as required by the patent specification.

Third, plaintiff cites to the report of its expert as support for its argument that the coils and antenna be on the same horizontal plane. Id. at 26-27. Yet plaintiff's expert's report and plaintiff's interpretation of the

dictionary definition (above) should be rejected to the extent they conflict with the intrinsic evidence, which clearly links the term "concentric" to the terms "co-boresighted" and "co-located." See Phillips, 415 F.3d at 1320 (quoting Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1578 (Fed. Cir. 1995) (noting the "risk that [extrinsic evidence] will be used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history . . . .'"). In addition, plaintiff has not and cannot point to any language in the specification requiring that the coils and antenna be horizontally coplanar. Thus, plaintiff's construction should be rejected.

Finally, the court should disregard one section of plaintiff's argument that gives the false impression that its proposed construction is directly supported by the patent specification:

> The term "said metal detector coils concentrically surrounding said antenna" means that "the metal detector coils and the antennas have a common center point and are in the same horizontal plane." ['048 patent] at col.6, ll.1-4, col.7, ll. 51-67, figs.3-9.

Pl.'s Cl. Const. Br. at 25. In fact, the language in the second quotation never appears in the patent specification. Moreover, the phrases "common center point" and "same horizontal plane" appear in neither the patent

specification nor the prosecution history. The court should completely disregard this section, which plaintiff wrongly portrays as intrinsic evidence. Id.

## Conclusion

For the reasons set forth above, the court should construe the disputed claim terms and phrases as proposed by defendant.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN FARGO
Director

s/John A. Hudalla
JOHN A. HUDALLA
Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530
Telephone: (202) 307-0334
Facsimile: (202) 307-0345

Of Counsel:
GARY L. HAUSKEN
Attorney
U.S. Department of Justice

August 20, 2008

Attorneys for Defendant