IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NET RESULTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1376 C |
| | ) | |
| THE UNITED STATES, | ) | Judge Lawrence M. Baskir |
| | ) | |
| Defendant. | ) | |

PLAINTIFF'S REBUTTAL BRIEF FOR CLAIM CONSTRUCTION

TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. "MINE DETECTION SYSTEM" .......... 2

A. Persons having ordinary skill in the art would not limit the definition of "Mine Detection System" to a system that detects mines but would define the system by the words of the specification outlining the probability of detection and the false alarm rate and by the extrinsic evidence that the system must have a reasonable scan rate. .......... 2

B. Plaintiff's use of the preamble in limiting Claim 1 of the '048 Patent is appropriate as the Claim is not a "self-contained description of the structure" and therefore depends for completeness upon the introductory clause. .......... 5

III. "HOUSING" .......... 8

A. Persons having ordinary skill in the art would reject Defendant's definition of "Housing" in favor of the definition supported by both the intrinsic evidence of the patent and the extrinsic evidence of the parties' experts. .......... 8

B. Defendant's reliance on Toro is misplaced because Plaintiff has not imported functional language to create a structural limitation; Plaintiff's definition is the one that would be accepted by persons of ordinary skill in the art, because it correctly recognizes that the "housing" must have certain attributes in order for the invention to function. .......... 11

IV. "SAID METAL DETECTOR COILS CONCENTRICALLY SURROUNDING SAID ANTENNA" .......... 15

A. Defendant's proposed construction giving the terms "concentrically surrounding" and "co-located" the same meaning is in conflict with the intrinsic evidence. .......... 15

B. In accordance with Figure 3, "Said Metal Detector Coils Concentrically Surrounding Said Antenna" means the metal detector coils surround the antenna such that there is a common center and both lie in the same horizontal plane. .......... 16

V. SUMMARY .......... 18

# TABLE OF AUTHORITIES

**Affymetrix, Inc. v. Illumina, Inc., 446 F. Supp. 2d 277 (D. Del. 2006)....13, 14**

Applied Materials Inc. v. Advanced Semiconductor Materials Am., Inc., 98 F.3d 1563 (Fed. Cir. 1996)....4, 12

**Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc., 262 F.3d 1258 (Fed. Cir. 2001)....15**

CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146 (Fed. Cir. 1997)....12

Cytyc Corp. v. TriPath Imaging, Inc., No. 03-12630-DPW, 2005 U.S. Dist. LEXIS 29850 (D. Mass. Nov. 28, 2005)....9

Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111 (Fed. Cir. 2004)....6

Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985 (Fed. Cir. 1999)....15

Kropa v. Robie, 187 F.2d 150 (C.C.P.A. 1951)....3

Lantronix, Inc. v. Acticon Techs. LLC, No. 6:05CV35, 2006 U.S. Dist. LEXIS 12032 (E.D. Tex. Mar. 6, 2006)....11

Marston v. J.C. Penney Co., 353 F.2d 976 (4th Cir. 1965)....2

NEC Corp. v. Hyundai Elecs. Indus. Co., 30 F. Supp. 2d 546 (E.D. Va. 1998)....11

On Demand Mach. Corp. v. Ingram Indus. Inc., 442 F.3d 1441 (Fed. Cir. 2006)....2

O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351 (Fed. Cir. 2008)....8

**Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc)........................................................................1, 6, 9**

Toro Co. v. White Consol. Indus., Inc., 266 F.3d 1367 (Fed. Cir. 2001)........................................................................11, 12

Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576 (Fed. Cir. 1996).......13

Pursuant to the Court's Order of July 25, 2007, as modified by the Order of January 15, 2008, Plaintiff Net Results, Inc. ("Plaintiff") hereby submits its rebuttal claim construction brief in response to Defendant's Claim Construction Brief submitted on behalf of The United States ("Defendant").

## I. INTRODUCTION

In Defendant's Claim Construction Brief ("Def.'s Cl. Constr. Br."), Defendant fails to properly apply bedrock principles of claim construction set forth by the Federal Circuit's en banc decision in Phillips v. AWH Corp., which stated, "We have made clear . . . that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question . . . ." 415 F.3d 1303, 1313 (Fed. Cir. 2005). In the Defendant's proposed constructions, this Court is asked time and again to ignore the perspective of one of ordinary skill in the art. In view of the principles set forth by the Federal Circuit's en banc decision in Phillips, and because the Federal Circuit has deemed the patent specification to be the single best guide to the meaning of a disputed term, the Court should adopt Plaintiff's construction of the disputed terms in this case.

# II. "MINE DETECTION SYSTEM"

## A. Persons having ordinary skill in the art would not limit the definition of "Mine Detection System" to a system that detects mines but would define the system by the words of the specification outlining the probability of detection and the false alarm rate and by the extrinsic evidence that the system must have a reasonable scan rate.

The term "mine detection system" is appropriately submitted to the Court for construction because Claim 1 of the '048 patent is limited by the preamble, which contains that phrase and is a necessary and defining aspect of the claims at issue. "[A] preamble will be considered a limitation if 'the claim cannot be read independently of the preamble and the preamble must be read to give meaning to the claim or is essential to point out the invention.'" 3 Donald S. Chisum, Chisum on Patents § 8.06[1][d], at 8-201 (Rel. 82, Mar. 2002) (quoting Marston v. J.C. Penney Co., 353 F.2d 976, 986 (4th Cir. 1965)). Stated another way, "[i]n considering whether a preamble limits a claim, the preamble is analyzed to ascertain whether it states a necessary and defining aspect of the invention, or is simply an introduction to the general field of the claim." On Demand Mach. Corp. v. Ingram Indus. Inc., 442 F.3d 1331, 1343 (Fed. Cir. 2006). Conversely, a claim is not limited by the preamble where the claim is a "self-contained description of the structure not depending for completeness upon the introductory clause; or where the claim or count was drawn to a product

and the introductory clause merely recited a property inherent in the old composition defined by the remaining part of the claim." Kropa v. Robie, 187 F.2d 150, 152 (C.C.P.A. 1951).

Claim 1 of the '048 patent is limited by the preamble because otherwise the claim is not a "self-contained description of the structure." Claim 1 of the '048 patent depends for completeness upon the introductory clause, "mine detection system." This is evident by simply considering the listing of elements in Claim 1 apart from the preamble:

> Claim 1 of the '048 Patent without the preamble (and without the transition term "comprising") recites:
>
> > a wand having a first end and an opposite second end;
> > a housing mounted onto said first end of said wand;
> > a signal processor supported by said wand;
> > a ground penetrating radar system in communication with said signal processor, said radar system including a transmitter, a receiver, and an antenna, said antenna having a first field of view; and
> > a metal detector system in communication with said signal processor, said metal detector system including metal detector coils, said metal detector coils having a second field of view;
> > said antenna and said metal detector coils being contained within said housing, said metal detector coils concentrically surrounding said antenna.

Ex. 1, '048 Patent at col.7 ll.53-67.

This recitation makes plain that Claim 1 of the '048 patent, without the preamble, is not a "self-contained description of the structure." Without the preamble, the detection system described might be a short pulse high resolution radar for detection of cadavers. It might also be a system for use in geophysical prospecting for seam tracking, location of underground services, mine workings, tunnels, boreholes, and/or archeological and subsurface mapping. None of those is the inventor's intent. Rather, the claims are limited to the invention described for "mine detection."

The limitation is supported by the prosecution history. "Whether a preamble stating the purpose and context of the invention constitutes a limitation of the claimed process is determined on the facts of each case in light of the overall form of the claim, and the invention as described in the specification and illuminated in the prosecution history." Applied Materials Inc. v. Advanced Semiconductor Materials Am., Inc., 98 F.3d 1563, 1572-73 (Fed. Cir. 1996). During prosecution, the examiner required an amendment to limit the scope of the detection system from the originally proposed "object detection" to the more specific "mine detection." Ex. 3, Office Action, '048 Patent File History at 2 (File Wrapper G 013426) (Jan. 16, 1997); Ex. 4, Amendment and Response, '048 Patent File History at 3-8, 10 (File Wrapper G 013434-39, G 013441) (Feb. 13, 1997).

While Defendant seeks to discount this interaction, it cannot ignore that the change occurred. Despite its attempts to do so, Defendant cannot render the change required by the examiner to be meaningless. When the phrase is viewed in light of the overall form of the claim, as illuminated by the prosecution history, it is apparent that "mine detection system" is intended to inform and limit the claims. The title and description of the invention – first proposed by the inventor as "object detection" – gave way to the necessary refinement of "mine detection" and the preamble "mine detection system" was added to the amended claims.

Plaintiff submits that the preamble of Claim 1 of the '048 patent is necessary to give life, meaning, and vitality to the claims. Accordingly, the Court should construe the term "mine detection system."

**B. Plaintiff's use of the preamble in limiting Claim 1 of the '048 Patent is appropriate as the Claim is not a "self-contained description of the structure" and therefore depends for completeness upon the introductory clause.**

Defendant's proposed construction under the guise of "plain meaning" is divorced from the perspective of one of ordinary skill in the art. Def.'s Cl. Constr. Br. 2, 7. As such, it is in direct conflict with the Federal Circuit's en banc decision in Phillips, which precludes such an approach: "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the

time of the invention, i.e., as of the effective filing date of the patent application." Phillips, 415 F.3d at 1313 (citing Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

Defendant's proposed definition of "mine detection system" that is "a system that detects mines" is circular and divorces the phrase from the specification and the understanding of a person having ordinary skill in the art. The understanding of a person having ordinary skill in the art is consistent with Plaintiff's proposed construction: "a system that detects mines with a high probability of detection, low probability of false alarms and a reasonable scan rate." Plaintiff's Opening Brief for Claim Construction ("Pl.'s Cl. Constr. Br.") 10.

Intrinsic evidence supports two of the three listed inherent properties: high probability of detection and low false alarm rate.[1] Ex. 1, '048 Patent at col.3 ll.25-56, [57] ('048 Abstract). Defendant's expert testimony and both parties' expert reports strongly support the intrinsic evidence and add support for the third intrinsic property listed in Plaintiff's proposed construction of a mine detection system; a "reasonable scan rate." Ex. 6,

[1] Defendant's brief correctly points out an error in Plaintiff's opening brief, which incorrectly provided a citation in the patent to support "scan rate." Plaintiff does not argue that the inherent property of "reasonable scan rate" is supported by intrinsic evidence and apologizes to the Court for any confusion.

Riggs Expert Report at 4; Ex. 5, Riggs Dep. 133:12-18, May 22, 2008; Ex. 7, Mensa Expert Report at 1-2.

Specifically, Defendant's expert witness, Dr. Lloyd S. Riggs, provided the following:

> In the case of a mine detection system, hand held system that used ground penetrating radar and metal detector, it would process those signals hopefully in a way that would maximize probability of detection and minimize probability of false alarm, and at the same time, allow a reasonably high scan rate.

Ex. 5, Riggs Dep. 133:12-18; see also Ex. 6, Riggs Expert Report at 4 ("Early in the 1990s it was certainly clear to practitioners in the field that a dire need existed to develop a hand held mine detector with high probability of detection (Pd), low probability of false alarm (Pf), and good scan rate (ability to rapidly clear a path through an area contaminated with mines).").

Plaintiff's expert, Dr. Dean L. Mensa, is in agreement with Dr. Riggs. Dr. Mensa states in his expert report that with regard to mine detection systems, "The performance measures of significance to commanders of ground troops are probability of detection, false-alarm rate, and scan rate. . . . [S]ystems that require a long time to examine a patch of ground . . . impede rapid progress." Ex. 7, Mensa Expert Report at 1-2.

It is clear there were at least three properties inherent to a land mine detection system as understood by those of ordinary skill in the art at the time of the invention: 1) high probability of detection; 2) low probability of false alarms; and 3) a reasonable scan rate. For the aforementioned reasons, Plaintiff urges this Court to adopt Plaintiff's proposed construction for the mine detection system that is the subject of the '048 patent.

## III. "HOUSING"

### A. Persons having ordinary skill in the art would reject Defendant's definition of "Housing" in favor of the definition supported by both the intrinsic evidence of the patent and the extrinsic evidence of the parties' experts.

Defendant's failed understanding of Phillips carries forward in Defendant's proposed construction of the term "housing." Defendant's proposed construction for "housing" is "[a] cover." Def.'s. Cl. Constr. Br. 15. Here again, Defendant proposes a construction that is divorced from both the intrinsic and extrinsic evidence. Defendant ignores the intrinsic evidence from the '048 patent and the extrinsic evidence of its own expert.

Applying the principle set forth in Phillips, the term "housing" is to be given "the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention." O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed.

Cir. 2008) (citing Phillips, 415 F.3d at 1312-13); accord Cytyc Corp. v. TriPath Imaging, Inc., No. 03-12630-DPW, 2005 U.S. Dist. LEXIS 29850, at *5 (D. Mass. Nov. 28, 2005) ("[T]he ordinary and customary meaning of a claim is not that of a layperson, but 'the meaning that the term would have to a person of ordinary skill in the art in question . . . .'") (quoting Phillips, 415 F.3d at 1313).

In view of this principle of claim construction, the term "housing" is clearly understood from its use within the four corners of the '048 patent. In the present invention, the "housing" is as proposed by Plaintiff, "a protective enclosure for containment of an apparatus used to prevent damage in handling or operation" (Pl.'s Cl. Constr. Br. 15), as shown in the written description and drawings of the '048 patent. Ex. 1, '048 Patent at col.5 ll.65-66, col.6 ll.6-7, 14-15, 22-23, 35-36, 52-53, col.7 ll.54, 65-67, fig.1, figs. 3-9. More specifically, the "housing" is a hemispherical plastic enclosure that contains the ground-penetrating radar (GPR) antenna, metal detector, and related components that make the device suitable for handheld operations. Id.

The deposition testimony of Defendant's expert supports the intrinsic evidence. Specifically, Dr. Riggs was asked about the "housing" requirements of a land mine detection system as follows:

> [Q.] Let me start over. You're using this radar system or a combination system outdoors, is that correct?
> A. Right. Certainly one would do that.
> Q. How do you, how do you protect, how do you protect a system, the electronic components of such a system?
> A. Well, the -- I mean that would be certainly a part of, of what one was interested in, in pursuing via the design.
> I mean certainly there might be some components or parts of the system that would, would, in a brass board version of it at least, might be damaged by say moisture or rain or soil contamination or dust.
>
> Q. And how would you protect against those elements?
> A. Well, they would need to be packaged in some way to, to protect them from the, from the outside elements, you know, metallic case perhaps.
> Q. Would sackcloth do?
> A. Well, I mean I guess that would provide some protection, but generally speaking, you want it to be weatherproof, you know, and maybe in a sealed container so that it would be impervious to moisture, moisture and rain.

Ex. 5, Riggs Dep. 123:8-124:12.

As evidenced by Defendant's expert witness in Deposition testimony, a sackcloth would not serve the intended purpose of a "housing" for the '048 patented invention. Id. Therefore, "[a] cover" is too broad a construction of the term "housing." Defendant's proposed construction is inadequate. The meaning of "housing" is best embodied by Plaintiff's

proposed construction and the Court should reject Defendant's proposed construction that the housing is a generic cover.

**B. Defendant's reliance on Toro is misplaced because Plaintiff has not imported functional language to create a structural limitation; Plaintiff's definition is the one that would be accepted by persons of ordinary skill in the art, because it correctly recognizes that the "housing" must have certain attributes in order for the invention to function.**

Concerning term construction of "housing," Defendant argues that Plaintiff's construction imports functional language into a structural limitation. Def.'s Cl. Constr. Br. 15-16. The sole authority cited by Defendant in support of this argument, Toro Co. v. White Consolidated Industries, Inc., 266 F.3d 1367 (Fed. Cir. 2001), is distinguishable and does not support Defendant's strained interpretation of "housing."

Defendant's argument fails to consider that courts properly consider a claim feature's purpose when defining its attributes. See Lantronix, Inc. v. Digi Int'l, Inc., No. 6:05CV35, 2006 U.S. Dist. LEXIS 12032, at *11-*13 (E.D. Tex. Mar. 6, 2006) (agreeing with parties' compromise construction of "housing" to mean "case or enclosure to cover and protect the connector's internal components" (emphasis added)). Thus, when construing claims, trial courts define terms in a way that is consistent with the invention's intended use and the problem it is trying to solve. E.g., NEC Corp. v. Hyundai Elecs. Indus. Co., 30 F. Supp. 2d 546, 553 (E.D.

Va. 1998) ("[There is no] doubt that the patent's purpose is a proper interpretive guide . . . .") (citing CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146, 1160 (Fed. Cir. 1997); Applied Materials, 98 F.3d at 1573).

Regarding Toro, the claim at issue in that case included an air-inlet cover used on a device that could be used as either a vacuum or a blower. 266 F.3d at 1369. The district court had interpreted "air inlet cover" to require that it perform a certain function, i.e., automatically inserting and removing a ring that reduced the diameter of the air-intake opening, thereby increasing pressure during operation as a blower. Id. at 1368-69. Under this interpretation, the district court granted summary judgment of noninfringement because the accused product had an air-inlet cover that could not perform the function because it was not attached to the ring. Id. at 1369. The Federal Circuit reversed the claim construction, holding that the district court had improperly imported a function into the claims. Id. at 1371. Analyzing infringement under the doctrine of equivalents, the court also noted that the particular function was not "a key objective of this invention." Id. at 1372.

In contrast to the claim construction in Toro, Plaintiff in the present case does not seek a construction requiring the housing to perform a particular function. Rather, Plaintiff's construction simply defines a

necessary attribute of the housing, i.e., that it be protective, so that the claimed invention can perform its primary function, i.e., mine detection. In the specification of the '048 patent, the term "housing" is clearly understood as being protective. Ex. 1, '048 Patent at col.5 ll.65-66, col.6 ll.6-7, 14-15, 22-23, 35-36, 52-53 (referring to the "protective cover," i.e., housing).[2]

It is further understood that the "housing" is mounted at the end of a wand, where the co-located GPR and metal detector are contained. Ex. 1, '048 Patent at col.7 l.54 (referring to the "mounted" housing), id. at col.7 ll.65-67, fig.1, figs.3-9 (referring to and illustrating the sensors "contained" within the housing). Emphasis of the words "protective," "mounted," and "contained" is provided to demonstrate the attributes of the "housing." "[M]ounted and "contained" are in the Independent Claim 1. Id. at col.7 ll.51-67. The "housing" is "mounted" at the end of the wand and the two sensors are "contained" within the housing for mine detection. Id.; see also Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996)

---

[2] The specification uses the term "cover" synonymously with "housing," making those portions of the specification relevant to construction of the term "housing" in the claims. Affymetrix, Inc. v. Illumina, Inc., 446 F. Supp. 2d 277, 287 & n.4 (D. Del. 2006) (citing portions of the specification referring to "body" and "casing" in support of its construction of "housing").

("In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term.").

Cases that are on point (unlike Toro) support Plaintiff's proposed construction. For example, in Affymetrix, Inc. v. Illumina, Inc., 446 F. Supp. 2d 277, 286 (D. Del. 2006), one of the patents in suit covered a biotechnology package comprising a substrate with a probe array and a housing. Both parties offered overly broad definitions of "housing," including "a structure in which something is contained" and "casing that separates the probe array from the atmosphere." Id. at 287. The district court rejected both definitions. Relying on housing functions "consistently described throughout the specification," the court construed "housing" to mean "a structure that covers, protects and supports the probe array." Id. (emphasis added).

Accordingly, the Court should adopt Plaintiff's construction of the term "housing": "a protective enclosure for containment of an apparatus used to prevent damage in handling or operation."

## IV. "SAID METAL DETECTOR COILS CONCENTRICALLY SURROUNDING SAID ANTENNA"

### A. Defendant's proposed construction giving the terms "concentrically surrounding" and "co-located" the same meaning is in conflict with the intrinsic evidence.

Concerning the third disputed term, which in this case is actually a phrase, "said metal detector coils concentrically surrounding said antenna," Defendant sets forth a distorted argument based on the premise that the term "concentric" has the same definition as "co-located." Def.'s Cl. Constr. Br. at 19-21. It does not. See Pl.'s Cl. Constr. Br. 22-29. "Generally, there is a 'heavy presumption' in favor of the ordinary meaning of claim language as understood by one of ordinary skill in the art. . . . This presumption is overcome . . . where the patentee has chosen to be his own lexicographer . . . ." Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc., 262 F.3d 1258, 1268 (Fed. Cir. 2001) (quoting Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999)).

Because the specification shows that "co-located" and "concentric" are used in different ways in the patent, Defendant's proposed construction that they are in the same space is in conflict with the intrinsic evidence and should be rejected. See id. at 1269-72 (rejecting a proposed definition of the term "mode" based on differing transmission "rates" because there was

"no question that the . . . patent specification uses the terms 'mode' and 'rate' to refer to two different and distinct concepts"). Defendant's definition fails because it fails to give meaning to "concentrically surrounding."

Defendant's proposed construction is so broad that it could describe an arrangement of a system in which a radar antenna simply hovers over the metal detector at some unspecified distance between the two detectors. Clearly, in such an arrangement the metal detector and radar antenna are no longer concentric. More importantly, as we outline below, the metal detector coils in such a system would not be "surrounding" the antenna, as is required by the '048 patent claims and as depicted in Figure 3 of the '048 patent.

### B. In accordance with Figure 3, "Said Metal Detector Coils Concentrically Surrounding Said Antenna" means the metal detector coils surround the antenna such that there is a common center and both lie in the same horizontal plane.

In the present case, the detailed description of Figure 3 of the '048 patent expressly refers to an embodiment that is concentric surrounding, co-located and co-boresighted. Ex. 1, '048 Patent at col.6 ll.1-4. These three terms are distinct. The terms co-located and co-boresighted are assigned specific meaning in the text of the patent. Id. at col.2 ll.5-10, ll.19-22. Concentric means having a common center and the addition of

the word surrounding means that the coils surround the antenna such that the coils and antenna have the same common center and lie in the same plane. Id. at fig.3. The term "concentric" has its ordinary meaning as indicated in Plaintiff's original "Claim Construction of the Patent-in-Suit" on page 8: "The claims refer to 'said metal detector coils concentrically surrounding said antenna[,]' with concentric generally having its ordinary meaning." Ex. 2, Claim Construction of the Patent-in-Suit at 8.

Figure 3 most plainly illustrates what is meant by the term "concentric" and "concentrically surrounding." Ex. 1, '048 Patent at fig.3. The metal detector coils **302** are wrapped around the antenna **305**. Id. The metal detector coils and antenna have a common center and lie in the same horizontal plane. Id. The term "concentrically surrounding" is important for at least two reasons: 1) the term describes how the antenna and the metal detector coils relate to one another; and 2) the term describes how the antenna and metal detector coils are packaged or "contained" inside the protective "housing." Id. at col.7 ll.65-67.

Co-located and co-boresighted are well-defined in the patent. Concentrically surrounding has its ordinary meaning and is depicted in figure 3. Accordingly, the Court should adopt Plaintiff's construction that "said metal detector coils concentrically surrounding said antenna" means

"the metal detector coils and the antenna(s) have a common center point and are in the same horizontal plane."

## V. SUMMARY

For the substantive reasons set forth above and inasmuch as the construction by Plaintiff is supported by the patent claims, the patent specification, the prosecution history, and the extrinsic evidence, including the extrinsic evidence proposed by Defendant, this Court must adopt the construction proposed by Plaintiff. A "mine detection system" is "a system that detects mines with a high probability of detection, low probability of false alarms and a reasonable scan rate." A "housing" is "a protective enclosure for containment of an apparatus used to prevent damage in handling or operation." "Said metal detector coils concentrically surrounding said antenna" means "the metal detector coils and the antenna(s) have a common center point and are in the same horizontal plane."

Respectfully submitted,

Dated: September 4, 2008

s/ Thomas O. Mason
THOMAS O. MASON
Williams Mullen
8270 Greensboro Drive
Suite 700
McLean, VA 22102
Phone: (703) 760-5200
Facsimile: (703) 748-0244

Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of September 2008, the foregoing Plaintiff's Rebuttal Brief for Claim Construction was filed electronically. I further certify that the foregoing was served via electronic mail upon:

John A. Hudalla
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Washington, DC 20530
(202) 307-0345 (facsimile)

Counsel for Defendant The United States

s/ Thomas O. Mason
Thomas O. Mason